23CA0802 Peo v Whitt 07-16-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0802
Fremont County District Court No. 15CR224
Honorable Gilbert A. Martinez, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Steven Todd Whitt,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE SCHUTZ
Lipinsky and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 16, 2026

---

Philip J. Weiser, Attorney General, Paul Koehler, Senior Counsel, Radhika M. Kattula, Assistant Attorney General Fellow, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Daniel J. Sequeira, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Steven Todd Whitt, appeals his convictions of attempted second degree murder and several counts of assault arguing that the trial court erred by permitting the testimony of three medical professionals who treated Debra Robertson, the victim in this case; admitting a written summary of Robertson's narrative of the events giving rise to the charges; and admitting evidence that Whitt had previously strangled Robertson.

¶ 2    We affirm the judgment of conviction.

## I.    Background

¶ 3    A jury could have reasonably found the following facts from the evidence introduced at trial.

¶ 4    Whitt was married to Robertson.  The couple was financially struggling.  In June 2015, Whitt, Robertson, and Robertson's daughter (Whitt's stepdaughter) went for a walk near their house. The couple had been arguing throughout the day, and they continued to argue when they returned home from the walk. Robertson eventually went into their yard to work alone in her garden, and Whitt worked on a rock retaining wall nearby.

¶ 5    While working, Robertson felt "a big hit" on the back of her head.  She looked up to see Whitt standing over her, holding a large

1

rock over his head.  Whitt told Robertson, "[Y]ou're going to die today."  Robertson tried to move away, but Whitt tackled her and held her to the ground.  He then put his hands over her nose and mouth and held her down.  As Robertson struggled, Whitt grabbed another rock and hit her with it on the top-left side of her head.  Robertson temporarily lost her vision at this point.

¶ 6     Robertson attempted to reason with Whitt, but he responded by pinching her nose and putting his hand over her mouth.  Robertson testified that Whitt told her to: "Just stop.  Just stop.  Just die already."  She lost consciousness.

¶ 7     Sometime later, Robertson regained consciousness and attempted to reach the house.  Whitt, who was wearing gloves this time, pushed her down and again placed his hands over her mouth and nose.  Whitt then took off his shirt and placed it over her mouth and nose, and Robertson again lost consciousness.

¶ 8     After regaining consciousness, Robertson was able to make it to her car and drove to the hospital.  There she was treated by Rebecca Parsons-Gerstel, RN, a trauma nurse, and Dr. Scott Geiger, an emergency room physician, both of whom testified at trial.

¶ 9    The prosecution charged Whitt with one count of attempted second degree murder, one count of second degree assault, and two counts of first degree assault.

¶ 10    Whitt's first trial resulted in a mistrial before opening statements due to an insufficient number of potential jurors after the prosecutor referred to inadmissible evidence.  The trial was rescheduled and completed six months later.  The jury at the second trial convicted Whitt on all counts.  Whitt appealed his conviction, and a division of this court determined that the trial court admitted improper evidence and vacated Whitt's convictions and remanded for a third trial.  *See People v. Whitt,* (Colo. App. No. 17CA1297, June 9, 2022) (not published pursuant to C.A.R. 35(e)) (*Whitt I*).

¶ 11    At both the second and third trials, Robertson's three treating medical professionals testified: Parsons-Gerstel; Geiger; and Dr. Steven Whitmarsh, Robertson's personal physician (collectively, the experts).  The prosecution endorsed all the experts as witnesses when the case was initially filed in 2015, and then again shortly before the first trial began in February 2016.

¶ 12    The experts also appeared on the prosecution's witness lists filed before the second trial — in May 2016 and again in March 2017.  Each expert testified extensively at the second trial.

¶ 13    At a motions hearing prior to the third trial, counsel and the court had the following exchange concerning the experts:

> [Prosecutor]: The same endorsements from the original trial still stand.
>
> [Defense counsel]: So is it then the same expert?  Is that who you —
>
> [Prosecutor]: Yeah, I just have to double — yes. I just have to double check on some things.
>
> [Defense counsel]: Sure.  So Judge, if the same individual — I would agree.  I think the endorsement from 2015 technically would serve as notice.

At the hearing, the court directed both sides to file new witness lists and ordered them to update their expert disclosures with any new information that postdated the second trial.  All the experts appeared on the prosecution's January 2023 witness list.

¶ 14    Before the third trial started, Whitt's counsel asserted that the prosecution had not provided the new expert disclosures, including updated curricula vitae (CVs) and endorsements that updated the experts' fields of expertise.  But Whitt's counsel acknowledged that

4

the experts had all testified at the second trial and she had read the transcripts of their testimony. The prosecutor represented that, at the third trial, each expert's testimony would be substantially similar to their testimony during the second trial; she had tried to secure updated CVs from the experts; and they had not timely responded. The court permitted the experts to testify on the assumption that their testimony and opinions at the third trial would be basically the same as at the second trial, and because Whitt's counsel had adequate notice of their qualifications and anticipated opinions.

¶ 15   At the conclusion of trial, the jury convicted Whitt on all counts. Whitt appeals his convictions.

## II.   Discussion

¶ 16   Whitt raises multiple arguments on appeal, three of which stem from the experts' testimony: (1) the trial court abused its discretion by permitting the experts to testify notwithstanding the prosecution's inadequate expert disclosures; (2) the experts testified beyond the scope of their expertise; and (3) Parsons-Gerstel's written summary improperly bolstered Robertson's testimony. Whitt also argues that the trial court improperly admitted CRE

404(b) evidence.  And finally, he argues that the cumulative effect of the trial court's errors requires reversal.

¶ 17    We address each of his contentions in turn.

### A.    Whitt Was Not Prejudiced by the Lack of Supplemental Disclosures

#### 1.    Standard of Review

¶ 18    "We review a trial court's evidentiary rulings for an abuse of discretion."  *People v. Vanderpauye*, 2021 COA 121, ¶ 16 (quoting *Campbell v. People*, 2019 CO 66, ¶ 21), *aff'd*, 2023 CO 42.  "A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or if it misapplies the law."  *Id.*  By contrast, we review de novo a trial court's conclusions of law.  *Dempsey v. People*, 117 P.3d 800, 807 (Colo. 2005).  This includes a trial court's interpretation of the rules of criminal procedure.  *People v. Bueno*, 2018 CO 4, ¶ 18.

¶ 19    Rule 16(I)(a)(1)(III) of the Colorado Rules of Criminal Procedure defines the prosecution's disclosure obligations for expert witnesses:

> (1) The prosecuting attorney shall make available to the defense the following material and information which is within the

6

possession or control of the prosecuting
attorney. . . concerning the pending case:

. . . .

(III) Any reports or statements of experts made
in connection with the particular case,
including results of physical or mental
examinations and of scientific tests,
experiments, or comparisons . . . .

## 2.    Disclosures

¶ 20    Whitt argues that the prosecution did not properly disclose the

opinions and qualifications of the three experts.  Specifically, he

argues that the disclosures the prosecution eventually provided for

the experts — including summaries of their testimony and updated

CVs — were both late and inadequate, in part because the

testimony summaries did not include the "causation testimony"

that he argues they provided at trial.

¶ 21    On the morning of the third trial, Whitt argued that the

prosecution had failed to comply with the court's expert disclosure

order because the prosecution had not provided updated CVs and

reports for the experts by the deadline the court had set.  The trial

court determined that because the experts had all testified before,

and the prosecution represented that their testimony would be the

same as at the second trial, Whitt had sufficient notice of the

experts, their qualifications, and the substance of their testimony. The court therefore denied Whitt's motion.

¶ 22    The trial court's conclusion regarding the adequacy of the 2015 disclosures was supported by the prior admission of Whitt's counsel.  Recall that the prosecutor represented that the experts would provide the same testimony at the third trial that they had presented at the second trial.  And in response to that representation, Whitt's counsel stated: "I would agree.  I think the endorsement from 2015 technically would serve as notice."  This admission was critical because counsel acknowledged that she had adequate notice of the experts that Whitt now challenges, along with copies of their prior testimony.

¶ 23    Whitt argues that he needed updated disclosures so he could address any changes in the experts' opinions since the second trial. But his trial counsel admitted she received and reviewed transcripts of the experts' 2015 testimony, and — aside from limited causation issues separately addressed *infra* Part II.B — Whitt fails to identify any material differences between the experts' testimony at the third trial versus the second trial.

¶ 24    Similarly, Whitt argues that he needed the experts' updated CVs so he could challenge their qualifications.  He notes that "one of the experts' qualifications did lapse in the last couple of years."  But that expert — Whitmarsh — simply testified he was no longer a member of the American Academy of Family Physicians (AAFP), a voluntary professional organization that does not certify physicians.  But Whitmarsh also testified that he remained board certified in family practice.  Whitt fails to explain how he was prejudiced by not knowing in advance of trial that Whitmarsh was no longer a member of the AAFP.

¶ 25    Whitt also had the opportunity to examine all the experts about their qualifications but chose not to.  And he failed to identify on appeal any material changes in the experts' qualifications between the second and third trials.  Thus, he has failed to demonstrate any prejudice resulting from the prosecution's failure to make the court-ordered disclosures.

¶ 26    Part of the purpose of expert disclosures in criminal cases is to permit the defense to prepare for the experts' cross-examination.  Crim. P. 16(I)(d)(3) ("The intent of [expert disclosures] is to allow the defense sufficient meaningful information to conduct effective cross-

examination under CRE 705.").  Based on defense counsel's acknowledgment that she had read the transcripts of the experts' testimony at the second trial, the trial court determined that Whitt was able to adequately prepare a complete cross-examination of all three experts.

¶ 27    Relatedly, while Whitt's appellate briefs spend a good deal of time addressing the purpose of expert disclosures and potential sanctions for the failure to provide such disclosures, Whitt does not identify any specific opinions that the experts provided at the third trial that were not disclosed through the experts' testimony at the second trial.[1]  And in his reply brief, Whitt acknowledges that "[t]he crux of the question here is not notice of the experts' testimony, but of the experts' qualifications and the ability to challenge those qualifications on the stand."

¶ 28    True, as Whitt notes, the prosecution failed to provide the defense with updated expert CVs and summaries by the Friday

---

[1] At oral argument, Whitt's counsel argued that Parsons-Gerstel testified about consistency in a manner that was not described at the second trial, and that Geiger addressed concussions that were not addressed at the second trial.  But these contentions were not raised in the opening or reply briefs, so we do not discuss them further.

before trial, as the court had ordered. The prosecutor represented that she had requested updated CVs from the experts but that she had not heard back from them. Importantly, neither in the trial court nor on appeal did Whitt explain how the prosecution's failure to provide the updated CVs and endorsements materially prejudiced his trial counsel's ability to prepare for the third trial or to cross-examine the experts at that trial. Again, he argues general principles concerning a defendant's due process right to notice of the evidence against him and right to present a defense and confront witnesses. But he fails to explain how the absence of updated CVs or endorsements compromised any of those rights.

¶ 29    Whitt also takes issue with the trial court's allegedly improper reliance on the law of the case doctrine to excuse the prosecution's failure to provide the updated disclosures. In the absence of demonstrated prejudice, we need not further parse the trial court's rationale for allowing such testimony.

¶ 30    We perceive no abuse of discretion or prejudice based on the trial court's determination that Whitt had adequate notice of the experts' testimony and qualifications.

11

### 3. Sanctions

¶ 31 Whitt also argues that the trial court abused its discretion by not imposing sanctions against the prosecution for its failure to comply with the court's expert disclosure order. A trial court has broad discretion when choosing whether to impose sanctions against a party. *Nagy v. Dist. Ct.*, 762 P.2d 158, 160 (Colo. 1988). Discovery sanctions are intended to remedy prejudice and deter future misconduct. *See People v. Lee*, 18 P.3d 192, 196-97 (Colo. 2001) (Remedies for discovery violations serve "the dual purposes of protecting the integrity of the truth-finding process and deterring discovery-related misconduct," and, in the absence of willful misconduct, "the goal must be to cure any prejudice resulting from the violation.").

¶ 32 Although the prosecution did not follow the trial court's order regarding disclosing the experts' updated CVs and endorsements, the trial court nevertheless determined that the prosecution's failures were not sanctionable because Whitt still had sufficient notice of all relevant aspects of the experts' anticipated testimony and their qualifications to provide such testimony.

¶ 33 The trial court's findings are supported by the record. As previously explained, the experts testified extensively at the second trial and, before the third trial, Whitt's counsel read the transcripts of that testimony, including testimony about the experts' experience and qualifications to provide their respective opinions.

¶ 34 Therefore, we cannot say that the trial court abused its discretion by declining to impose sanctions against the prosecution for its failure to comply with the court's discovery order.

### B. The Experts Did Not Testify Outside Their Expertise or Improperly Bolster Robertson's Testimony

¶ 35 Whitt contends that the trial court abused its discretion by permitting the experts to testify outside the scope of their expertise. Relatedly, he argues that some of the experts' testimony improperly bolstered Robertson's testimony.

¶ 36 The People respond that the experts' respective testimony was within the scope of their expertise and did not rise to the level of improper bolstering. We agree with the People.

#### 1. Standard of Review and Applicable Law

¶ 37 The determination of whether an expert's testimony has exceeded their approved scope of expertise is within the trial court's

13

discretion.  *People v. Watson*, 53 P.3d 707, 711 (Colo. App. 2001).

CRE 702 governs the admissibility of expert testimony, and under its "broad scope," experts may testify as to their knowledge, skill, experience, training, or education, and a trial court can admit such testimony "if the witness can offer 'appreciable' assistance on a subject beyond the understanding of an 'untrained layman.'" *People in Interest of Strodtman*, 293 P.3d 123, 129-30 (Colo. App. 2011) (quoting *People v. Williams*, 790 P.2d 796, 798 (Colo. 1990)); CRE 702.

¶ 38    While experts may opine upon an ultimate issue, they may not usurp the jury's factfinding role.  *People v. Rector*, 248 P.3d 1196, 1203 (Colo. 2011).  When examining whether an expert's testimony has gone so far as to usurp the jury's role, we look at a number of factors, including, but not limited to, whether: (1) the testimony was clarified on cross-examination; (2) the trial court properly instructed the jury on the law and that it could accept or reject the expert's opinion; and (3) the expert testified that the defendant committed or likely committed the charged crime.  *Id.*; *People v. McMinn*, 2013 COA 94, ¶ 51.

¶ 39    We review preserved nonconstitutional errors for harmless

error.  *People v. Baker*, 2021 CO 29, ¶ 38; Crim. P. 52(a).  "Under

this standard, we reverse only if the error affected the substantial

rights of the parties."  *Baker*, ¶ 38.

¶ 40    We review unpreserved errors for plain error.  *Garcia v. People*,

2019 CO 64, ¶ 3.  An error is plain if it is "both obvious and

substantial."  *Id.* (quoting *People v. Miller*, 113 P.3d 743, 750 (Colo.

2005)).  For a plain error to require reversal, the error must have

"so undermined the fundamental fairness of the trial itself as to

cast serious doubt on the reliability of the judgment of conviction."

*Hagos v. People*, 2012 CO 63, ¶ 18 (quoting *Wilson v. People*, 743

P.2d 415, 420 (Colo. 1987)).

¶ 41    In general, to preserve an issue for appeal, a defendant must

"raise[] an issue sufficiently to give the trial court an opportunity to

rule on the claim."  *People v. Margerum*, 2018 COA 52, ¶ 17, *aff'd*

*on other grounds*, 2019 CO 100.  An objection is sufficient to

preserve an issue for appeal when it draws the court's attention to

the asserted error.  *People v. McFee*, 2016 COA 97, ¶ 31.  If the

court rules on a claim and makes findings of fact and conclusions

of law, the claim is sufficiently preserved for appeal.  *Id.*

## 2.    Preservation

¶ 42    We must first consider whether Whitt's objections to the experts' opinions were preserved.  Whitt argues in his opening brief that he objected to the scope and admissibility of the experts' testimony at the second trial, and that these objections were sufficient to preserve the same issues at the third trial.  Whitt is mistaken.

¶ 43    "Generally, objections made during a case that resulted in a mistrial do not preserve objections at a subsequent retrial."  *People v. Melara*, 2025 COA 48, ¶ 83 (citing *United States v. Palmer*, 122 F.3d 215, 221 (5th Cir. 1997)).  This rule is especially apt when, as here, the second (or in this case, third) trial is held before a different judge than the one who presided at the previous trial.  *See id.* (citing *United States v. Mann*, 590 F.2d 361, 371 (1st Cir. 1978)).

¶ 44    During the third trial, Whitt objected that Geiger's testimony exceeded the scope of his expertise on the grounds that Geiger was not an expert in "causation."  The court heard argument and overruled the objection.  Therefore, Whitt preserved his objection to Geiger's testimony, and we review that contention for harmless error.  *See Baker*, ¶ 38.  However, Whitt does not point us to similar

objections at the third trial regarding the scope of either Whitmarsh's or Parsons-Gerstel's testimony, and upon reviewing the transcripts, we discern no such objections. Thus, we review Whitt's unpreserved contentions regarding Whitmarsh's and Parsons-Gerstel's testimony for plain error. *See Garcia,* ¶ 3; *Melara,* ¶ 83.

### 3. Analysis

¶ 45 The trial court qualified Geiger as an expert in emergency medicine. Whitt argues that Geiger improperly opined that it appeared Robertson was struck in the head at least twice because there were "two separate, distinct injuries." Specifically, on direct examination, Geiger testified about photos of Robertson's injuries:

> [Prosecutor:] I'm going to hand you what's been — let me back up a little bit here. The abrasions that we looked at with the — on the back of the head. The two cuts on the back of the head. Were those consistent with somebody being hit with a rock?
>
> [Defense counsel]: Objection, Judge. Doctor Geiger is not an expert in injury causation.
>
> THE COURT: Objection is overruled.
>
> [Geiger]: It would appear that she clearly got hit with something.
>
> [Prosecutor:] Twice at least?

17

[Geiger:] I would say yeah, those look like two separate, distinct injuries.

¶ 46 Given Geiger's accepted expertise in emergency medicine, we conclude that the trial court did not err by permitting him to testify that Robertson had two distinct head injuries. And, contrary to Whitt's contention, this testimony was not an opinion on the cause of Robertson's injuries.

¶ 47 Whitt also complains that Geiger described the head wounds as "blows" and opined that Robertson's injuries constituted "serious bodily injury." We perceive no error. *See People v. Martinez*, 608 P.2d 359, 360-61 (Colo. App. 1979) (the trial court did not err by allowing an expert witness to testify "that the victim's injuries amounted to serious bodily injury in the language of the statutes"); *see also* § 18-1-901(3)(p), C.R.S. 2025 (defining serious bodily injury). And we fail to see, and Whitt does not explain, how the use of the term "blow" amounts to an opinion on the causation of Robertson's injuries.

¶ 48 Moreover, Whitt had an opportunity to cross-examine Geiger and clarify his testimony about Robertson's head injuries. And the trial court instructed the jury at the close of the trial that it was

18

"not bound by the testimony of witnesses who have testified as experts" as part of a thorough instruction about expert witness testimony.  Finally, at no point did Geiger testify that Whitt committed the charged crimes, that he thought it likely that Whitt had committed them, or that he knew what might have caused Robertson's head injuries.  *See Rector*, 248 P.3d at 1203; *McMinn*, ¶ 51.

¶ 49     Whitt also argues that Geiger testified that concussions "always met the definition of [serious bodily injury]."  The testimony in the record unfolded as follows:

> [Defense counsel:] Again, we know that you've testified previously in this case, right?
>
> [Geiger:] Yes.
>
> [Defense counsel:] In your prior sworn testimony you did state that concussion, to you, always meets the definition of serious bodily injury.
>
> [Geiger:] I would put it in the category of serious bodily injury.  Yes.
>
> [Defense counsel:] Even though not all concussions are the same, right?
>
> [Geiger:] Correct.

[Defense counsel:] Even though not all concussions do, in fact, cause long term impairment.

[Geiger]: Correct.

[Defense counsel:] If you see a concussion, you are saying [serious bodily injury].

[Geiger:] Typically, yes.

¶ 50    Because Whitt's previous counsel elicited Geiger's "concussion equals serious bodily injury" testimony at the second trial, and Whitt's counsel chose to discuss the same testimony during her cross-examination of Geiger at the third trial, we conclude any error was invited.  *See People v. Gingles*, 2014 COA 163, ¶ 21 ("Under the 'invited error' doctrine, a defendant may not complain on appeal of an error he 'invited or injected' into the case, and so 'must abide the consequences of his . . . acts.'" (quoting *People v. Chavez*, 2012 COA 61, ¶ 50)).

¶ 51    Next, Whitt argues that Parsons-Gerstel's testimony was improper because she opined on an ultimate issue and improperly bolstered Robertson's testimony.

¶ 52    Because this contention is unpreserved, we review it for plain error.  The trial court qualified Parsons-Gerstel as an expert in forensic nursing.  She provided fact testimony about Robertson's

20

injuries and demeanor, and the court permitted her to answer a jury question about whether her role as a victim's advocate clouded her judgment.

¶ 53     Whitt notes correctly that bolstering testimony is generally improper. *See People v. Renfro*, 117 P.3d 43, 46 (Colo. App. 2004). Specifically, "[b]olstering testimony is improper when it relates to the witness's truthfulness on a specific occasion." *Id.* However, Parsons-Gerstel did not testify about Robertson's truthfulness; she testified that Robertson's injuries were consistent with "strangulation" and "suffocation," and that Robertson "present[ed] as a person who had been through a traumatic event."

¶ 54     Simply providing testimony that is consistent with another witness's testimony is not bolstering. And even testifying that a victim's testimony is consistent with certain evidence is not inherently improper bolstering. *People v. West*, 2019 COA 131, ¶¶ 37, 39-43 (detective's testimony that the timing of certain text messages was "consistent with" and "did not conflict with" another witness's testimony did not amount to improper bolstering).

¶ 55    Whitt also argues that Parsons-Gerstel's answer to a jury

question constituted improper bolstering.  The jury's question and

Parsons-Gerstel's testimony follows:

> [THE COURT:] Question, does being an
> advocate for victims cloud your judgement
> about their recollection of the assault?
>
> [Parsons-Gerstel:] So I am an advocate for my
> patients, but I don't cue them to tell me things.
> When I did that job — and as we all should —
> we go in unbiased.  We want the patient's
> history as it actually happened, as they
> remember it.  We are not there to change the
> story, to make it the way we want it to be.  We
> go in unbiased, because that's what we are
> hearing from our patients.  I will always, as a
> nurse, advocate for my patient, no matter what
> role I am in, but that doesn't make me change
> the facts of what's presented to me.

¶ 56    Whitt's argument seems to be based on the idea that Parsons-

Gerstel was improperly bolstering her own credibility by stating that

nurse examiners "go in unbiased" — and, by extension, improperly

bolstered Robertson's testimony regarding the narrative of the

incident and the severity of the injuries.  However, improper

bolstering only occurs when an expert implies that another witness

is telling the truth.  *People v. Cooper*, 2021 CO 69, ¶ 95.

¶ 57     Parsons-Gerstel testified as to how she approached her work with trauma patients. She did not mention Robertson, say that she thought Robertson was truthful, or testify that trauma victims were usually truthful. Rather, Parsons-Gerstel's answer to the jury's question focused on her individual perspective when working with trauma patients.

¶ 58     Returning to the *Rector* and *McMinn* factors, neither Geiger nor Parsons-Gerstel usurped the jury's role. *See Rector*, 248 P.3d at 1203; *McMinn*, ¶ 51. Whitt had an opportunity to cross-examine both experts. And before deliberations began, the trial court instructed the jury about the expert opinions it had heard during trial: "You are not bound by the testimony of a witness who has testified as an expert; the credibility of an expert's testimony is to be considered as that of any other witness. You may believe all of an expert witness's testimony, part of it, or none of it." Lastly, neither Geiger nor Parsons-Gerstel testified that Whitt was likely to have committed the assault against Robertson or actually did so.

¶ 59     Finally, Whitt's argument regarding Whitmarsh's testimony is undeveloped. Aside from his general objection to the late disclosure of Whitmarsh's testimony, Whitt does not point to any portion of his

testimony that he found problematic or explain how any portion of Whitmarsh's testimony at the third trial unfairly prejudiced him. We cannot address an argument that has not been made. Accordingly, we do not address the matter further. *See People v. Liggett*, 2021 COA 51, ¶ 53 ("[A]ppellate courts do not address undeveloped arguments." (citing *Antolovich v. Brown Grp. Retail, Inc.*, 183 P.3d 582, 604 (Colo. App. 2007))), *aff'd*, 2023 CO 22.

¶ 60    Based on these facts, we perceive no error, much less plain error, in the trial court's admission of the experts' testimony.

### C.    Parsons-Gerstel's Summary Was Not Cumulative

¶ 61    Whitt also argues that the trial court abused its discretion by admitting a summary of Robertson's injuries that Parsons-Gerstel wrote the day after she treated Robertson. Whitt argues that the summary was "cumulative" and improperly bolstered Robertson's testimony. We disagree with both arguments.

¶ 62    "The fact that evidence is cumulative does not, by itself, render the evidence inadmissible. Instead, admission of cumulative evidence amounts to an abuse of discretion only if it is manifestly arbitrary, unreasonable, or unfair under the circumstances." *People v. Morrison*, 985 P.2d 1, 6 (Colo. App. 1999), *aff'd*, 19 P.3d

668 (Colo. 2000). Thus, simply because the summary might have repeated things Robertson said in her testimony does not render the summary inadmissible.

¶ 63 Moreover, Parsons-Gerstel's written summary — made the day after she treated Robertson — does not indicate that Robertson's testimony was truthful. And the narrative's consistency with Robertson's testimony does not make it improper. *See West*, ¶¶ 37, 43.

¶ 64 We perceive no abuse of discretion in the trial court's admission of Parsons-Gerstel's treatment summary.

### D. Prior Strangulation Testimony

¶ 65 At the third trial, the court allowed the prosecution to introduce Robertson's testimony concerning a 2013 incident in which Whitt attempted to strangle her after he and Robertson argued about finances.

¶ 66 Whitt argues that the trial court erred by permitting Robertson's testimony because it involved improper CRE 404(b) evidence. Relatedly, Whitt argues that the prosecution failed to provide advance notice of its intent to rely on the 2013 incident as required by CRE 404(b)(3). The rule provides that, in criminal

cases, the prosecution must "provide reasonable notice of [evidence of other acts] that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it"; "articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose"; and "do so in writing before trial — or in any form during trial if the court, for good cause, excuses lack of pretrial notice." CRE 404(b)(3)(A)-(C).

¶ 67　　The People contend that the trial court did not abuse its discretion by permitting Robertson's testimony about the 2013 incident because it was relevant to Whitt's intent when he assaulted Robertson two years later. In addition, the People note that, before the second trial, the prosecution alerted the defense that it intended to rely on CRE 404(b) evidence by filing a notice referencing the 2013 incident.

### 1.　　Standard of Review

¶ 68　　As previously noted, we review a trial court's evidentiary rulings for an abuse of discretion. *Campbell*, ¶ 21.

### 2.　　Robertson's Testimony

¶ 69　　The People acknowledge that, on remand after *Whitt I*, Whitt filed a renewed request that the prosecution provide notice of the

CRE 404(b) evidence that it intended to rely on at the third trial. And the People also acknowledge that the prosecutor stated that she had no excuse for failing to provide a new notice in connection with the third trial.[2] Nonetheless, the trial court permitted the prosecution to argue that the evidence of the 2013 incident should be admitted and that the absence of notice was not prejudicial to Whitt because the defense had notice that the 2013 incident was part of the prior act evidence that the prosecution intended to rely on. Thus, the trial court concluded that there was no prejudice associated with the failure to update the disclosure.

¶ 70    On appeal, Whitt does not allege any facts to illustrate how the absence of a new notice concerning the 2013 incident prejudiced

---

[2] The supreme court adopted CRE 404(b)(3) in 2021, with an effective date of July 1, 2021. *See Rojas v. People*, 2022 CO 8, ¶ 26 n.5.  CRE 404(b)(3) applies to cases filed on or after July 1, 2021. *See* Rule Change 2021(03), Colorado Rules of Evidence (Amended and Adopted by the Court En Banc, Mar. 19, 2021), https://perma.cc/S9DV-NEPT.  Because this case was filed in 2015, CRE 404(b)(3) does not apply.  The People noted this timing issue in their answer brief, and Whitt did not contest its inapplicability in his reply brief. *See People v. Bondsteel*, 2015 COA 165, ¶ 61 ("An appellant's failure to respond in the reply brief to an argument made in the answer brief may be taken as a concession."), *aff'd*, 2019 CO 26, *overruled on other grounds by*, *Garcia v. People*, 2022 CO 6.

him.  Thus, we discern no error in the trial court's conclusion that Whitt was not prejudiced by the absence of a new notice.

¶ 71     Turning to the substance of Whitt's contention, we begin by noting that CRE 404(b)(1) prohibits "[e]vidence of any other crime, wrong, or act" from being admitted into evidence "to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character."  However, CRE 404(b)(2) permits evidence that goes toward "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

¶ 72     To determine whether evidence is admissible under CRE 404(b), courts apply the four-part test from *People v. Spoto*: (1) the evidence must relate to a material fact; (2) the evidence must be logically relevant; (3) the relevance of the evidence must not be based on the prohibited inference — that is, the defendant had a bad character and acted in conformity with it; and (4) the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice against the defendant.  795 P.2d 1314, 1318 (Colo. 1990).

¶ 73    Whitt argues that the court abused its discretion when considering the third and fourth *Spoto* factors.  He asserts that the only purpose for admitting the 2013 incident was to portray Whitt "as a bad man acting in accordance with that character."  We disagree.

¶ 74    Before ruling on the admissibility of the 2013 incident, the trial court heard Robertson's testimony outside the presence of the jury and concluded that she could testify about the 2013 incident for the limited purpose of demonstrating Whitt's intent at the time of the 2015 assault.

¶ 75    And before Robertson testified, the trial court instructed the jury as follows:

> Ladies and gentlemen of the jury, the evidence you will hear of an alleged act by [Whitt] against Debra Robertson prior to the date of June 29, 2015 is admitted for a limited purpose, namely whether [Whitt] had intent to cause bodily injury, and whether [Whitt] had intended to cause serious bodily injury to Debra Robertson on June 29, 2015.  You may not consider it for any other reason.

¶ 76    Robertson's testimony about the incident was limited.  The entire line of questioning is captured below:

> [Prosecutor:] So you go to grab his shoulder.

[Robertson:] Yes.  And just intending to grab his shoulder to get his attention and I came down harder than expected.  Like I slapped his shoulder.  And he spun around off the love seat and I went running back down the hall to get away from him.  He caught me in the hall.

[Prosecutor:] I mean when you say you slapped him, was it hard enough to leave a mark or anything?

[Robertson:] No.

[Prosecutor:] So you run down the hall, then what happens?

[Robertson:] He caught me in the hall and he strangled me until I was passed out enough that I slid to the floor, and he continued to strangle me on the floor.

[Prosecutor:] What was he doing to strangle you?

[Robertson:] He had his hands around my neck.

[Prosecutor:] Did you lose consciousness completely?

[Robertson:] I'm not certain.  If I did it was momentarily.

[Prosecutor:] Were there injuries you observed from this?

[Robertson:] Yeah.  I had some bruising on my neck and a lot of bruising on my arms and wrists from him also holding me down and hitting me later into that fight.

[Prosecutor:] Did you report this?

[Robertson:] No.

[Prosecutor:] What time period did this happen in?

[Robertson]: Roughly around winter 2013. The end of 2013 or very beginning of 2014.

¶ 77    Following this testimony, the trial court instructed the jurors again:

> Ladies and gentlemen of the jury, the evidence you have heard concerning an alleged act by [Whitt] against [Robertson] prior to the date of June 29, 2015 was admitted for a limited purpose, namely whether [Whitt] had intent to cause bodily injury, and whether [Whitt] had intent to cause serious bodily injury to [Robertson] on June 29, 2015. You may not consider it for any other reason. You will get a written instruction which says this as well.

¶ 78    We disagree with Whitt that the third *Spoto* prong is not met. The third prong of the *Spoto* test "does not demand the absence of the inference"; it "merely requires that the proffered evidence be logically relevant independent of that inference." *People v. Snyder*, 874 P.2d 1076, 1080 (Colo. 1994). The prior and charged acts are sufficiently similar because they both involved Whitt attempting to kill Robertson (by strangulation in the prior incident and by assault and suffocation in the charged incident) following an argument over

financial matters. And the incidents were separated by only two years and involved the same parties. Given these similarities, evidence of the prior assault was logically relevant not because of Whitt's generally "bad" character, but because it demonstrated his intent to strangle Robertson in reaction to their argument about finances. *See People v. Torres*, 141 P.3d 931, 934 (Colo. App. 2006) ("Evidence of a prior act of domestic violence is relevant to show the defendant's intent to harm the victim . . . ."); *People v. Morales*, 2012 COA 2, ¶ 31 (holding that the third *Spoto* prong is satisfied "where there is 'similarity' between the charged and uncharged acts, showing a 'specific tendency' on the defendant's part" (citation omitted)); *see also* § 18-6-801.5(1), C.R.S. 2025 (evidence of similar prior acts of domestic violence "can be helpful and is necessary in some situations in prosecuting crimes involving domestic violence").

¶ 79 Regarding the fourth *Spoto* prong, a trial court has substantial discretion to determine whether the prejudicial value of prior bad act evidence outweighs its probative value. *People v. Willner*, 879 P.2d 19, 27 (Colo. 1994). Because this prong favors admissibility, we must afford the evidence "the maximum probative value" attributable by a reasonable fact finder and "the minimum unfair

32

prejudice" to be reasonably expected. *Yusem v. People*, 210 P.3d 458, 467 (Colo. 2009). The prior act evidence was relevant to Whitt's intent. And the risk of unfair prejudice was mitigated by the limiting instruction. Accordingly, the record and case law supported the trial court's decision to admit the evidence for the limited purpose of proving Whitt's intent. *See Torres,* 141 P.3d at 934; *see also People v. Cross,* 2023 COA 24, ¶¶ 17-18 (the court did not abuse its discretion by admitting testimony regarding previous incidents of domestic violence for the limited purpose of motive, which, like intent, is one of the exceptions under CRE 404(b)(2)).

¶ 80    Given the narrow scope of Robertson's testimony, and especially in light of the two limiting instructions that the court gave contemporaneously with her testimony, we perceive no abuse of discretion in the trial court's decision to admit evidence of the 2013 incident.

3.    Compliance with Court of Appeals Mandate

¶ 81    Whitt also argues that, in *Whitt I,* the division ordered the trial court to make specific findings regarding the admissibility of CRE 404(b) evidence. Whitt argues that the trial court erred by waiting to address the issue until the morning of the first day of trial.

¶ 82    It is true that trial courts must comply with an appellate

court's mandate.  *See Powell v. Hart*, 854 P.2d 1266, 1267 (Colo.

1993); *People v. Powell*, 917 P.2d 298, 299 (Colo. App. 1995).

However, the trial court complied with that mandate, albeit at the

last minute.

¶ 83    As discussed above, before the third trial started, Robertson

testified about the 2013 incident at a hearing outside the presence

of the jury.  The trial court then determined from her testimony that

the 2013 incident was admissible for the narrow purpose noted in

the limiting instruction.

¶ 84    Simply because the trial court made these findings in a

manner and timeline that Whitt disagrees with does not obviate the

fact that the trial court made specific CRE 404(b) findings about

Robertson's testimony concerning the 2013 incident.  These

findings complied with the mandate.  Thus, we discern no error.

## E.    No Cumulative Error

¶ 85    Finally, Whitt urges us to reverse the judgment based on the

cumulative impact of multiple errors.  The cumulative error doctrine

requires multiple errors by the trial court.  *See People v. Serna-*

*Lopez*, 2023 COA 21, ¶ 47 ("The doctrine of cumulative error is

based on the notion that multiple errors, in isolation, may be viewed as harmless, but the synergistic effect of the multiple errors may be so prejudicial that they deprive a defendant of a fair trial.").

¶ 86 As discussed above, we do not discern any errors, much less multiple errors. Accordingly, cumulative error does not apply.

### III. Disposition

¶ 87 The judgment of conviction is affirmed.

JUDGE LIPINSKY and JUDGE YUN concur.